## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EGIDIO FERRARA,**                                    Chapter 13
     Debtor                                    Case No.  13-12945-JNF
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**EGIDIO FERRARA**,
     Plaintiff

v.                                                    Adv. P. No. 13-1351

**OLGA LORD FERRARA and**
**BURNS & LEVINSON, LLP,**
     Defendants
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are Cross-Motions for Summary Judgment with respect to the Amended Complaint filed by Egidio Ferrara (the "Debtor") against his sister, Olga Lord Ferrara ("Ms. Ferrara"), and her counsel, the law firm of Burns & Levinson, LLP ("B & L").  B & L represented Ms. Ferrara in the Middlesex Probate and Family Court, Department of the Massachusetts Trial Court, in actions involving the Debtor, his spouse, Donna Ferrara ("Donna"), and Orsara, LLC, a limited liability company in which the Debtor and Donna hold interests.  Ms. Ferrara received an award of legal fees from the Probate Court pursuant to Mass. Gen. Laws ch. 231, § 6F on June 23, 2011 in an action brought against her by the Debtor.  Her attempts to collect the fee award from Donna and Orsara, LLC have generated the instant controversy.  Through his Amended Complaint,

1

the Debtor alleges that the Defendants violated both the automatic stay imposed by 11

U.S.C. § 362(a) and the codebtor stay imposed by 11 U.S.C. § 1301 in their collection

attempts.  The Defendants counter that the claims made against Orsara, LLC and Donna

are their separate liabilities as a result of their participation in a scheme to assist the Debtor

in avoiding the fee award and do not arise out of the Debtor's liability under the fee award

itself.  They contend the scheme gives rise to an independent cause of action against

Orsara, LLC and Donna and seek damages in the amount of the fee award.

The Court heard the Cross-Motions on May 27, 2014 and directed the parties to file

supplemental briefs.  The material facts necessary to decide the matters  are not in dispute

and the Cross-Motions are ripe for summary judgment. The Debtor submitted his

Affidavit, as well as the Affidavit of his counsel attesting to the truth and accuracy of

exhibits in support of his Motion for Summary Judgment.  The Defendants submitted the

Affidavit of their counsel attesting to the truth and accuracy of numerous additional

exhibits.

## II. FACTS

A. Background[1]

The Debtor filed a voluntary Chapter 13 petition on May 17, 2013.  On Schedule A-

Real Property, the Debtor listed an ownership interest in his principal residence as 150

---

[1] Certain procedural and background facts are taken from the Court's docket of
which the Court may take judicial notice. *See* LeBlanc v. Salem (In re Mailman Steam
Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court
appropriately took judicial notice of its own docket.").

Cherry Street, Sheldonville, Massachusetts as a tenant by the entirety.[2]  He valued the

_____

[2] As stated by the court in <u>Snyder v. Rockland Trust Co. (In re Snyder)</u>, 249 B.R. 40 (B.A.P. 1st Cir. 2000),

> The concept of a tenancy by the entirety derives from the common law. <u>Coraccio v. Lowell Five Cents Savings Bank</u>, 415 B.R. 145, 148 [415 Mass. 145, 612 N.E.2d 650] (1993). Massachusetts courts still look to the common law for most of its attributes, except that, with respect to tenancies by the entirety created after February 11, 1980, the common law was modified in certain respects by statute, G.L. c. 209, § 1, "in an attempt to equalize the rights of men and women holding property as tenants by the entirety." <u>Id.</u> at 151 [612 N.E.2d 650]. The tenancy by the entirety at issue in this case was created after the effective date of the statute and so is subject to the statutory modification. Accordingly, the law set forth below pertains to tenancies by the entirety created after the statutory modification, not necessarily to those created before the modification.

> A tenancy by the entirety is a form of concurrent ownership that can exist only between co-owners who are husband and wife. <u>Id.</u> at 148 [612 N.E.2d 650]. In such a tenancy, husband and wife "are seised of the estate so granted as one person, and not as ordinary joint tenants or tenants in common." <u>Id.</u> at 148 [612 N.E.2d 650], quoting from <u>Raptes v. Pappas</u>, 259 Mass. 37, 38, 155 N.E. 787 (1927) (emphasis added). Therefore, husband and wife hold the property not as "two tenants by the entirety," but as one person, in one tenancy. The point is more than semantic; it underscores that a tenancy by the entirety is a "unitary title": a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold. <u>Coraccio</u>, 415 Mass. at 151, 612 N.E.2d 650.

> A tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." <u>Campagna v. Campagna</u>, 337 Mass. 599, 605, 150 N.E.2d 699 (1958); <u>In re Conroy</u>, 244 [224] B.R. 282, 285 (Bankr. D. Mass. 1998) (Hillman, J.). Upon the occurrence of one of these events, however, the tenancy by the entirety is terminated, and the spouses' unitary title with it. . . .

<u>Snyder</u>, 249 B.R. at 43-44 (quoting <u>In re Snyder</u>, 231 B.R. 437, 441-42 (Bankr. D. Mass. 1999)).

3

property at $345,000 and disclosed that it was subject to two secured claims, held by Bank

of America and Citizens Bank, totaling $377,611. The Debtor listed, on Schedule B-Personal

Property, "stock and interests in incorporated and unincorporated businesses" in two

entities, Ferrara Insurance Company and Orsara, LLC, valued at $5,000 and $1,000,

respectively. He also listed a legal malpractice claim, which he valued at $600,000. On

Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed Donna as

the holder of a contingent, unliquidated claim "relating to money borrowed," in the sum

of $100,000[3] and Ms. Ferrara as the holder of an undisputed "Judgment - Legal Fees" in the

sum of $76,000. The Debtor also listed Donna as a codebtor on Schedule H-Codebtors with

respect to the creditors holding secured claims against the couple's residence, as well as

claims held by the Massachusetts Department of Revenue and the Massachusetts

Department of Unemployment Assistance.

In his Statement of Financial Affairs, the Debtor listed numerous lawsuits pending

in the Middlesex Probate and Family Court, as well as the legal malpractice claim. On

September 4, 2013, he commenced the adversary proceeding which is now before the

Court. Following the filing of his Amended Complaint, the Debtor amended Schedule B,

valuing his interests in Ferrara Insurance Company at $45,000 and his interest in Orsara,

---

[3] Donna did not file a proof of claim. Bank of America filed a proof of claim to
which it attached an Open-End Mortgage executed by the Debtor and Donna on May
22, 2007 with a credit limit of $200,000, as well as an Equity Maximizer Agreement and
Disclosure Statement, which was executed by the Debtor only on May 22, 2007 with a
credit limit of $200,000. The secured claim is not in default.

LLC at $100.  He claimed those interests as exempt on an amended Schedule C-Property

Claimed as Exempt.

The Debtor has filed multiple Chapter 13 plans since the commencement of his

Chapter 13 case.  In his Fourth Amended Chapter 13 plan, filed on May 12, 2014, the Debtor

disclosed his intention to utilize the entire net proceeds of $91,000 arising from settlement

of his legal malpractice claim to fund his Chapter 13 plan, as well as his intention to pay

his creditors, including Ms. Ferrara, in full, with interest.  In addition, he disclosed that he

owned a .001% share of Orsara, LLC.  and that he did not intend to pay Donna's separately

classified claim  through the plan.

On June 11, 2014, the Chapter 13 Trustee filed a Motion to Approve Consent

Agreement Regarding the Waiving of Statute of Limitations with respect to a potential

fraudulent transfer under 11 U.S.C. § 548 or Mass. Gen. Laws ch. 109A.  The Court

approved the Consent Agreement on June 16, 2014.

B. Facts

On or around August 30, 2006, the Debtor filed an Affidavit of Objections to the

probate of the last will and testament of his father, Michele Ferrara, who passed away in

August of 2002, and commenced two other actions in the Middlesex Probate and Family

Court challenging the validity of estate planning documents executed by his father, which

had the effect of disinheriting him in favor of Ms. Ferrara.  On October 1, 2009, the Probate

Court entered an order striking the Debtor's Objections to the allowance of the last will and

testament of his father.  It also entered a decree allowing the will and entered judgments

5

dismissing the Debtor's equity complaints to set aside the conveyance of 107 Irving Street, Waltham, Massachusetts (the "Irving Street property") to the Ferrara Realty Trust. On October 30, 2009, the Debtor filed a Notice of Appeal from the Probate Court's decree and judgments. As noted below, Appeals Court affirmed the Probate Court's decision. Approximately one year after the filing of the Notice of Appeal, Ms. Ferrara filed an Application for Attorneys' Fees and Costs pursuant to Mass. Gen. Laws ch. 231, § 6F, which is discussed below.

With respect to the Irving Street property, Orsara, LLC held a note in the original sum of $59,300 and a mortgage, encumbering the Irving Street property, which note and mortgage were executed by Ms. Ferrara in favor of Home Loan and Investment Bank, F.S.B. Orsara, LLC obtained the mortgage by virtue of an assignment, dated March 18, 2009. Home Loan and Investment Bank assigned the mortgage to Gibralter Savings Bank, F.S.B. in March of 2004. Gibralter Savings Bank then assigned the mortgage to Orsara, LLC. The date of the Assignment was set forth as March 18, 2009, for a stated consideration of $10 "and other good and valuable consideration," although the Assignment was executed by Gibralter Savings Bank on March 23, 2009. The Assignment was not recorded until January 27, 2010, however. In conjunction with Orsara, LLC's acquisition of the mortgage, on January 26, 2010, it executed a Loan Purchase and Sale Agreement and paid a purchase price of $85,802.33 to Gibralter Savings Bank by means of a Rockland Trust Treasurer's

Check.[4]  The Debtor avers that the money utilized to buy Ms. Ferrara's defaulted obligation

was borrowed against his residence, which, as noted above, he owns with Donna through

a tenancy  by the entirety.[5]

The Debtor stated in his Affidavit that he owns .001% of Orsara, LLC, which he

valued at $100, and that Donna has owned the remaining interest since the formation of the

limited liability company in March of 2009.[6]  The Debtor supported this assertion with

_____

[4] The Debtor in his Affidavit attached to his Motion for Summary Judgment
observed that the note had been in default for several years. He also stated that "[t]he
mortgage was taken out on my father's property when there was no mortgage on the
property, and the proceeds were never accounted for."  He added that when Orsara,
LLC obtained the note and mortgage he was not aware that his sister would be
awarded attorneys' fees.

[5] The Defendants noted that only the Debtor executed the Equity Maximizer
Agreement and Disclosure Statement pursuant to which Orsara, LLC obtained funds to
acquire the Irving Street mortgage.  Both the Debtor and Donna executed the mortgage
encumbering their residence, however.

[6] The Defendants attempt to contest this assertion by stating that the Debtor
obtained a $200,000 line of credit (the "LOC") from Bank of America, pursuant to an
Equity Maximizer Agreement and Disclosure Statement, dated May 22, 2007 (secured
by property owned by the Debtor and Donna); that the Debtor received advances
against the LOC on March 13, 2009 in the amount of $70,000 and in January 22, 2010 in
the amount of $20,000; that, after those funds were advanced, the Debtor contributed
them as a capital to Orsara, LLC; that Donna never made any capital or other
contributions to Orsara, LLC (an assertion denied by the Debtor); that, based on his
contributions to Orsara, LLC, the Debtor became the sole member and equity holder of
its interests pursuant to Mass. Gen. Laws ch. 156 C, §§ 29 and 30, while pointing to the
Debtor's Affidavit in which he stated that he never transferred any of his membership
interests in Orsara, LLC to anyone else.
The Defendants maintain that,  as a matter of state law, the Debtor is still the
owner of 100% of the membership interests of Orsara, LLC (an assertions denied by the
Debtor who points to Form K-1s filed with the IRS); that the Debtor remained the sole
manager and registered agent of Orsara, LLC throughout 2009, 2010, and 2011 until
April 18, 2012 when Donna was designated as the sole Manager and Resident Agent of

reference to Internal Revenue Service Form 1065, namely Schedule K-1, "Partner's Share of Income, Deductions, Credits, etc.," for the years from 2009 through 2012.  Although the Debtor owned a small fraction of the limited liability company, he was named the Resident Agent and Manager until Donna replaced him as Manager as set forth in Annual Reports for 2011 and 2012 which were filed on April 18, 2012.  In his Affidavit filed in support of his Motion for Summary Judgment, the Debtor expressly stated that "[s]ince its formation, my wife, Donna Ferrara has continually been the 99.999% owner of Orsara, LLC."

On June 23, 2011, the Probate Court entered an order requiring the Debtor to pay legal fees and expenses to Ms. Ferrara in the total sum of $78,202.80 within 30 days (the "Sanctions Order").  In awarding fees, the Probate Court stated:  "The Court finds that Egidio was represented by counsel, and that the contentions 'were wholly insubstantial, frivolous and not advanced in good faith.'"Ferrara v. Ferrara (In re Estate of Michelle [sic] Ferrara), Nos. 02P549EP1, 05B0104-GC, 06E0150-GC, Slip op. at 7 (Probate and Family Court June 23, 2011) (citations omitted).  It also stated:  "The Court finds that there is no

---

Orsara, LLC; that the K-1s do not establish any ownership interest contrary to law; and the timing of the assignment of the note and mortgage with respect to the Irving Street property is unclear.

The Court observes that although only the Debtor executed the Equity Maximizer Agreement, any advances under that agreement were secured by the mortgage on the marital residence which she executed.  Accordingly, the Defendants' assertion that the Debtor is the sole owner of Orsara, LLC as a matter of law because he alone contributed capital is not clear and, in any event, not relevant as Ms. Ferrara alleged in her complaints, discussed below, that the Debtor fraudulently transferred his interests in Orsara, LLC to Donna and that that conduct permitted her to sue Donna.

evidence that the actions of Egidio were not advanced in good faith." Id.[7]

On March 7, 2013, the Appeals Court of Massachusetts affirmed the decision of the

Probate Court.  See Ferrara v. Ferrara, 83 Mass. App. Ct. 1117, 984 N.E.2d 314 (2013).[8]

On April 8, 2013, approximately four weeks before the Debtor filed his Chapter 13

case on May 17, 2013, Ms. Ferrara filed a Verified Complaint for Civil Contempt in the

Probate Court due to the Debtor's failure to pay the legal fees in the sum of $78,202.80.

On or around August 16, 2013, after the Debtor filed his Chapter 13 petition and

without seeking relief from the automatic stay or codebtor stay, Ms. Ferrara, through her

counsel B & L, filed a Verified Complaint in Equity in the Probate Court against Donna,

Orsara, LLC, and Kenneth Busa,[9] seeking to set aside an alleged fraudulent transfer of the

Debtor's interest in Orsara, LLC to Donna.  Ms. Ferrara amended that complaint on or

around August 20, 2013.  She filed the complaints at a time when a closing was scheduled

---

[7] The statements appear contradictory.  The Debtor, however, successfully sued his Probate Court counsel for legal malpractice.

[8] On August 21, 2013, Ms. Ferrara moved for relief from the automatic stay to permit ministerial acts to be taken with respect to the appeals.  The Debtor did not object, although he stated:

> The Debtor has no objection to the lifting of the automatic stay for the sole purpose of ministerial acts to be taken by the clerk so long as it does not affect the Debtor, his interest in Orsara, LLC, or permit the Moving Party to take any action concerning the collection of sums owed.

[9] Attorney Busa was identified as a nominal defendant and the closing agent for the sale of the Irving Street property.

for July 31, 2013 for the sale of the Irving Street, property, stating that the buyer would be paying the amount needed to satisfy the mortgage and obtain its discharge.

In her complaints, Ms. Ferrara alleged that she believed that "Egidio formed Orsara, LLC and caused Orsara, LLC to acquire the mortgage in order to place Egidio in a position to foreclose on the property, and through foreclosure proceedings acquire title to the Property and thereby bypass the outcome of the will contest and equity cases." She added that "Egidio did not follow this course of action based on the advice of the attorney who then represented Egidio in this action." She further alleged, based on filings made with the Secretary of the Commonwealth, Corporate Division, which the Court notes merely reflect the identity of Orsara, LLC's Resident Agent, Manager and "SOC Signatory," that the Debtor assigned or transferred his interest in Orsara, LLC to Donna.

Ms. Ferrara set forth two counts in her August 16, 2013 Verified Complaint:  Count I-Fraudulent Transfer and Count II-Equitable Relief.  Specifically, she alleged that the Debtor transferred his interest in Orsara, LLC to Donna when he was insolvent and when Donna was aware of the Sanctions Order, i.e., after June 23, 2011.  She asserted that the transfer was not in exchange for reasonably equivalent value and was done intentionally to remove his interest in the company from his name so that it could not be reached by the Court.  In her claims for equitable relief, she expressed concern that the mortgage would be sold by Orsara, LLC and the payoff amount would be dissipated without payment pursuant to the Sanctions Order. In her requests for relief, Ms. Ferrara asked the Probate Court for the following:

> Enter a temporary restraining order and, after hearing, continue the temporary restraining order as a preliminary injunction *to prohibit Egidio,* Donna and Orsara, LLC from transferring, conveying, encumbering, assigning, pledging, selling, or concealing its interest in the real estate known as 107 Irving Street, Waltham, Middlesex County, Massachusetts . . . .

(emphasis supplied). Ms. Ferrara also requested a writ of attachment in the amount of $110,000 by trustee process against Orsara, LLC "for the interest of Donna Ferrara" to secure payment, as well as a judgment voiding the transfer or an order requiring Orsara, LLC to pay over to her the sums due under the Sanctions Order. Finally, she requested that the preliminary injunction be made permanent until all sums due of the Sanctions Order were paid in full, including attorneys' fees and costs.

In her Amended Verified Complaint, filed on August 20, 2013,[10] Ms. Ferrara alleged that the Debtor had not obeyed the Probate Court's order to pay her $78,202.80 from and after July 23, 2011. She also alleged that the Debtor transferred his interest in Orsara, LLC to Donna when he owed that sum; that Donna "knew or should have known about Egidio's outstanding debt under the Sanctions Order;" that the mortgage would be reachable by her to satisfy the Sanctions Order but for the transfer of the Debtor's interest in Orsara, LLC to Donna; that both the Debtor and Donna were aware of the Sanctions Order at the time of the transfer; and that "Egidio fraudulently conveyed to, and Donna received, any and all of his interests in Orsara, LLC for the purpose of concealing, hindering, delaying and obstructing payment of the Sanctions Order." Ms. Ferrara concluded that by acting in

---

[10] Unlike the Summons with respect to the original Verified Complaint, the Summons issued with respect to the Amended Verified Complaint was denominated "Civil Contempt Summons." Both summonses were served on August 22, 2013.

concert with her husband, Donna was "guilty [of] aiding and abetting violation of the Sanctions Order by Egidio."

In the prayers for relief set forth in the Amended Verified Complaint, Ms. Ferrara requested the issuance of a contempt summons and, after hearing, a finding that Donna was guilty of contempt for aiding and abetting the Debtor in violating the Sanctions Order.

## III. POSITIONS OF THE PARTIES

A. <u>The Debtor</u>

As set forth in her postpetition Verified Complaint against Orsara, LLC and Donna, Ms. Ferrara asserted that the Debtor transferred his interest in Orsara, LLC to Donna for less than equivalent value and that the Debtor's conduct together with that of his spouse "demonstrate[d] their intent and plan to secrete property by which Egidio could satisfy the Sanctions Order." In her Amended Verified Complaint, Ms. Ferrara alleged, based upon Annual Reports filed with the Secretary of the Commonwealth, which merely disclose the change in the identity of Orsara, LLC's Manager and Resident Agent from the Debtor to Donna, that the Debtor assigned or transferred his interest in Orsara, LLC to Donna.  She also asserted that the mortgage held by Orsara, LLC would be reachable by her to satisfy the Sanctions Order.  She contended that Donna was guilty of aiding and abetting violations of the Sanctions Order.

Based upon those allegations, the Debtor maintains that the actions of Ms. Ferrara and B & L violated the automatic stay and the codebtor stay.  He specifically references 11 U.S.C. § 362(a)(2), (3), (4) and (5), as well as <u>Soares v. Brockton Credit Union (In re Soares)</u>,

12

107 F.3d 969, 975 (1st Cir. 1997), and Fleet Mortg. Grp. v. Kaneb, 196 F.3d 265 (1st Cir. 1999).

He asserts that

> While the Defendants attempt to cloak the Probate Complaints as a separate causes of action [sic], aiding and abetting in both the context of a complaint for contempt and a fraudulent conveyance, which Donna Ferrara and Orsara, LLC deny, the real and obvious action is one in which the Defendants seek to obtain control over assets to pay themselves outside of this Court's jurisdiction, and frustrate the purpose of the Debtor's seeking relief in this Court. It is illogical to argue anything other than the same and for at least one of the Probate Complaints, there is no basis in law to find that a separate cause of action exists.

The Debtor maintains that there is no separate cause of action for aiding and abetting in the equity actions. He also argues that fraudulent conveyance claims belong to the Chapter 13 Trustee not the Defendants. He contends that the postpetition Probate Court complaints do not set forth independent causes of action against Orsara, LLC for aiding and abetting the alleged fraudulent conveyance of interests in Orsara, LLC as the aiding and abetting claims rest solely on the alleged fraudulent transfer of funds by the Debtor to Donna and Orsara, LLC, which the Chapter 13 Trustee has the exclusive right to bring.

B. The Defendants

The Defendants contend that, through the coordinated actions of the Debtor, Donna, and Orsara, LLC, the Debtor's membership interests in Orsara, LLC (valued at approximately $100,000) were improperly allocated or transferred from the Debtor to Donna. They add that "[b]efore the state court, Donna asserts that these interests are hers, although she admits that none of the capitalization for Orsara was paid by her" and that,

citing Mass. Gen. Laws ch. 156C, §§ 29, 30, "[i]n the absence of an operating agreement for

a limited liability company, under Massachusetts law ownership of the company rests in

the person(s) who paid in the capital." In sum, they contend that they have demonstrated

that Donna and/or Orsara, LLC participated in a scheme to assert title to the assets of the

Debtor and to put them out of the reach of creditors so that he might avoid the Probate

Court's June 23, 2011 Sanctions Order.

The Defendants argue that the relief Ms. Ferrara requested in her postpetition

Verified Complaint did not violate the automatic stay for the following reasons:

> The clear intent of the Defendant's first request for relief is to restrain Orsara
> from transferring its mortgage interest in the real property located at 107
> Irving. Neither the Debtor nor Donna holds an interest in 107 Irving, but both
> individuals are believed to exercise control over Orsara, and for that reason
> are included in the request for relief.  Neither the Debtor nor any other
> officer, member, or manager of a company holds a property interest in
> his/her right to exercise his/her corporate authority. Therefore, even if an
> injunction were issued against the Debtor, it would not constitute a collection
> action or an attempt to exercise control over property of the Debtor's estate.
> Furthermore, the Debtor is not named as a party to Complaint, and as a
> matter of black-letter law the Probate Court could not have exercised
> jurisdiction over, nor entered a restraining order against him, as a non-party.
> Lastly, even assuming, arguendo, that seeking a restraining order against the
> Debtor in his capacity as a controlling party of a non-debtor company and
> that such relief was available, no harm or costs would befall the Debtor or his
> estate upon the granting of such relief.

With respect to Ms. Ferrara's second request for a writ of attachment, the Defendants add:

> The relief sought in paragraph 2 of the request, clearly seeks relief against
> Orsara, a nondebtor party to the Complaint; the relief does not seek a writ
> against the Debtor's membership interests in Orsara. The assets of Orsara are
> not assets of the Debtor's estate. In re Kane, 2011 Bankr. LEXIS 2007 at *18-20
> (Bankr. D. Mass. May 23, 2011).  By the Debtor's logic, any lawsuit seeking
> damages against Verizon [the Debtor owns stock in Verizon] would also

14

violate the Automatic Stay, because any judgment against it could result in
a diminution of the value of his estate.

Finally, with respect to the request to void the transfer, the Defendants state that the
Debtor's interest in Orsara, LLC would be transferred from Donna to the Debtor and be
made part of his bankruptcy estate - - a collection action against Donna that would benefit
the estate.

The Defendants maintain that there is a "firmly-established judicial precedent that
[establishes] an independent cause of action exists against any person who knowingly
counsels, aids or assists a party in disobeying or circumventing a judgment," citing Bird
v. Capital Site Mgmt. Co., 423 Mass. 172, 178-79 (1996).   They add, citing Regal Knitwear
Co. v. NLRB, 324 U.S. 9, 14 (1945), that the "'essence' of this rule 'is that defendants [here,
the Debtor] may not nullify a decree by carrying out prohibited acts through aiders and
abettors [here, Donna and Orsara], although they were not parties to the original
proceeding.'" Thus, the Defendants state that an independent, direct cause of action for
contempt lies against aiders and abettors of a violation of a court order, relying on Goya
Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63 (1st Cir. 2002).

## IV. SUMMARY JUDGMENT STANDARD

In Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392 (B.A.P. 1st Cir. 2013),
the United States Bankruptcy Appellate Panel of the First Circuit stated:

> "In bankruptcy, summary judgment is governed in the first
> instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In
> re Varrasso), 37 F.3d 760, 762 (1st Cir.1994). "By its express
> terms, the rule incorporates into bankruptcy practice the

15

standards of Rule 56 of the Federal Rules of Civil Procedure."
Id.; *see also* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. "It is
apodictic that summary judgment should be bestowed only
when no genuine issue of material fact exists and the movant
has successfully demonstrated an entitlement to judgment as
a matter of law." In re Varrasso, 37 F.3d at 763 (citing Fed. R.
Civ. P. 56(c)). The "mere existence of some alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct.
2505, 91 L.Ed.2d 202 (1986).

In re Kelley, 498 B.R. at 397 (footnote omitted). *See also* Lowell Dev. and Fin. Corp. v.

Winter Hill Bank, FSB (In re Natale), 508 B.R. 790, 799-800 (Bankr. D. Mass. 2014).

## V. DISCUSSION

A. Applicable Law

1. The Automatic Stay

Section 362 of the Bankruptcy Code provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title, or an application filed under section
5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay,
applicable to all entities, of–

(1) the commencement or continuation, including the issuance
or employment of process, of a judicial, administrative, or
other action or proceeding against the debtor that was or could
have been commenced before the commencement of the case
under this title, or to recover a claim against the debtor that
arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of
the estate, of a judgment obtained before the commencement
of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4) any act to create, perfect, or enforce any lien against property of the estate;

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ;

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 362(a).  Section 362(a) "is among the most basic of debtor protections under bankruptcy law." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citing Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot., 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986)).  According to the United States Court of Appeals for the First Circuit,

> It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; see also Holmes Transp., 931 F.2d at 987; In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir.1982).

> The stay springs into being immediately upon the filing of a bankruptcy petition: "[b]ecause the automatic stay is exactly what the name implies-'automatic'-it operates without the necessity for judicial intervention." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994). It remains in force until a federal court either disposes of the case, see 11 U.S.C. § 362(c)(2), or lifts the stay, see id. § 362(d)-(f). This respite enables debtors to resolve their debts in a more orderly fashion, see In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994), and at the same time safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets."

<u>Sunshine Dev.</u>, 33 F.3d at 114; *see generally* 3 *Collier on Bankruptcy* ¶ 362.03 (15th rev. ed. 1996).

In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay. *See* <u>Kalb v. Feuerstein</u>, 308 U.S. 433, 438-39, 60 S.Ct. 343, 345-46, 84 L.Ed. 370 (1940); <u>Holmes Transp.</u>, 931 F.2d at 987-88; <u>Smith Corset Shops</u>, 696 F.2d at 976.

<u>Soares</u>, 107 F.3d at 975-76.

      2. The Cause of Action for "Aiding and Abetting"

In <u>Goya Foods, Inc. v. Wallack Mgmt. Co.</u>, 290 F.3d 63 (1st Cir. 2002), in which the

United States Court of Appeals for the First Circuit stated:

. . . [T]he district court rested its contempt finding upon an "aiding and abetting" theory. The legal underpinning of such a theory is impeccable: it has long been recognized that a nonparty may be held in civil contempt if, and to the extent that, he knowingly aids or abets an *enjoined party* in transgressing a court order. *See, e.g.*, <u>Gemco Latinoamérica, Inc. v. Seiko Time Corp.</u>, 61 F.3d 94, 98 (1st Cir. 1995). The question, then, reduces to whether the district court's deployment of the theory finds sufficient footing in the record.

There are two elements essential to invocation of this theory. The first is state of mind: a nonparty must know of the judicial decree, and nonetheless act in defiance of it. The second is legal identification: the challenged action must be taken for the benefit of, or to assist, a party subject to the decree.

<u>Goya Foods, Inc.</u>, 290 F.3d at 75 (emphasis supplied).

      B. <u>Analysis</u>

The Court finds that there are no genuine issues of material fact and that the Cross-

Motions are ripe for disposition. The Defendants argued that the Debtor was the sole

owner of Orsara, LLC, contending that membership interests in Orsara, LLC (valued at

approximately $100,000) were improperly allocated or transferred from the Debtor to

Donna, adding, without evidentiary support, that Donna, admitted that none of the

capitalization for Orsara, LLC was paid by her. They contend that, in the absence of an

operating agreement for a limited liability company, under Massachusetts law, ownership

of the company rests in the person(s) who paid in the capital, citing Mass. Gen. Laws ch.

156C §§ 29 and 30.  They base the assertion on the Debtor's sole ownership of Orsara LLC

because of advances from the LOC, which only the Debtor executed but was  secured by

the couple's residence which they own through a tenancy by the entirety.  Those advances

preceded the Sanctions Order, however.  Additionally, Donna is listed as a codebtor with

respect to the LOC obtained from Bank of America.

The Debtor, in support of his position, consistently asserted that he owns and has

owned .001% of Orsara, LLC since its formation.  He submitted an Affidavit and IRS Form

K-1s for the years 2009-2012. The Defendants submitted no credible evidence whatsoever

that the Debtor transferred any of his interest in Orsara, LLC to Donna.  The Annual

Reports which reflect the change in the identity of Orsara, LLC's Manager and Resident

Agent do not establish a transfer of the Debtor's interest to Donna or in any way reflect the

equity ownership of the limited liability company.  Moreover, the assertion that the Debtor

was the sole owner of Orsara, LLC rests on advances under the LOC which were secured

by property owned by both the Debtor and Donna as tenants by the entirety.  Accordingly,

Donna indirectly provided consideration as there is no evidence she was unaware of the

formation of the LLC and its acquisition of the Irving Street mortgage.

The Schedule K-1s to the tax returns filed by the Debtor and his spouse were

19

unrebutted and contradict the Defendant's assertion that the Debtor was the sole owner of

Orsara, LLC.  Assuming arguendo that the Debtor was the sole owner, the Defendants suit

against Orsara, LLC and Donna rests on a transfer of an ownership interest which they

failed to establish.

Pursuant to the First Circuit's direction in In re Soares, 107 F.3d at this Court is

required to thoroughly examine the Debtor's contentions that the Defendants violated the

automatic stay.  For the reasons set forth below, the Court concludes the Defendants

violated the automatic stay as their arguments that the Orsara, LLC and Donna "aided and

abetted" the Debtor in thwarting the Sanctions Order are without merit.  In the first place,

the Defendants failed to point to and establish with evidence, not mere assertions, actions

taken by the Debtor, Donna or Orsara, LLC that took place after June 23, 2011, the date of

the Sanctions Order.  Until the entry of that order, as a matter of logic, neither Donna nor

Orsara, LLC could aid and abet the Debtor in avoiding payment of the Sanctions Order.

Secondly, as noted above, the alleged fraudulent transfer by the Debtor of his

interest in Orsara, LLC is without evidentiary support and contradicted by Schedule K-1s

filed by the Debtor and Donna with the IRS.  In this regard, the Court rejects any notion

that the Annual Reports filed with the Secretary of the Commonwealth, pursuant to which

Orsara, LLC disclosed that Donna replaced the Debtor as Manager and Resident Agent of

Orsara, LLC, establish a change in ownership.  In addition, the Court is compelled to

observe the confusion among the parties as to the alleged "fraudulent transfer."  Ms.

Ferrara alleged that it was the transfer of the Debtor's interest in Orsara, LLC to his spouse,

while in the Motion to Approve Consent Agreement Regarding the Waiving of Statute of

Limitations, the Trustee identified the following:

> On or about May 22, 2007, the Debtor and his wife Donna Ferrara obtained
> a line of credit mortgage on their residence in the amount of $200,000.00,
> some of which was used to purchase a note and mortgage secured by 107-109
> Irving Street, Waltham, MA. Donna Ferrara used the funds to purchase the
> note and mortgage in the name of a limited liability company Orsara, LLC
> established by Donna Ferrara. On May 17, 2013, the Debtor filed a petition
> for relief under Chapter 13 of the Bankruptcy Code.  Pursuant to 11 U.S.C.
> §548 and MGL c. 109A, the Trustee could file an action to recover the transfer
> of the funds for the benefit of the estate.

The Certificate of Organization filed with the Secretary of the Commonwealth establishes

that Orsara, LLC was formed by the Debtor, not Donna, on March 9, 2009.  Moreover, the

mortgage encumbering the Irving Street property was purchased on or around January 26,

2010.  Both events occurred prior to the June 23, 2011 Sanctions Order and cannot form the

basis of a claim that Orsara, LLC and Donna aided and abetted the Debtor in avoiding

payment.

Finally, to the extent a fraudulent transfer of any sort occurred, that cause of action

belongs to the bankruptcy estate, and, as a general rule, the Chapter 13 Trustee has the

exclusive right to bring it.  *See, e.g.,* Mitrano v. United States (In re Mitrano), 468 B.R. 795,

801-02 (E.D. Va. 2012);  In re Johnson, 449 B.R. 7, 11, (Bankr. W.D. N.Y. 2011). *Cf.* Morley

v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 431-32 (1st Cir. 2007), *cert. denied,* 552 U.S. 823

(2007).

The Defendants argue that an independent cause action existed against Orsara, LLC

and Donna.  They cite Bird v. Capital Site Mgmt. Co., 423 Mass. 172 (1996), in which the

court stated:

> A person who was not a party to an action in which an order was entered
> may in certain circumstances be found to be in contempt of that order. "Any
> person . . . though not a party to the cause, who counsels or aids a party in
> disobeying a decree, is himself punishable." <u>Commonwealth v. Hudson</u>, 315
> Mass. 335, 347 (1943). The principle is not new. <u>Alemite Mfg. Corp. v. Staff</u>,
> 42 F.2d 832, 832 (2d Cir. 1930) ("a person who knowingly assists a defendant
> in violating an injunction subjects himself to civil as well as criminal
> proceedings for contempt").

<u>Bird</u>, 423 Mass. at 178.  *See also* <u>Regal Knitwear Co. v. NLRB</u>, 324 U.S. 9, 14 (1945)(noting

that a defendant may not nullify an injunction or restraining order by carrying out

prohibited acts aided and abetted by non-parties; <u>Goya Foods, Inc. v. Wallack Mgmt. Co.</u>,

290 F.3d 63 (1st Cir. 2002), *cert. denied,* 537 U.S. 974 (2002)(third parties held in civil

contempt of restraining orders).

This Court does not doubt the power of courts to find third parties in contempt for

aiding and abetting violations of restraining orders or injunctions.  That relief, however,

was not the relief sought by Ms. Ferrara in the Probate Court in her postpetition Verified

Complaint, which she subsequently amended for purposes of requesting that Donna be

held in civil contempt.  In her Verified Complaint filed with the Probate Court on August

16, 2013, she did not seek a finding of contempt against Orsara, LLC or Donna, and there

was no injunctive relief requested or entered against the Debtor; merely the Sanctions

Order requiring him to pay Ms. Ferrara's legal fees and expenses within thirty days.  Thus,

the elements required under <u>Regal Knitwear</u> and <u>Goya Foods</u> are absent.  Instead,

postpetition Ms. Ferrara sought restraining orders, injunctive relief and a writ of

22

attachment to collect the debt owed by the Debtor.  Therefore, the cases upon which the

Defendants rely are readily distinguishable.

In <u>McMullen v. Sevigny (In re McMullen)</u>, 386 F.3d 320 (1st Cir. 2004), the United

States Court of Appeals for the First Circuit observed:

> A plaintiff normally establishes a defendant's liability as an aider and abettor
> by demonstrating three elements: (1) the primary actor committed a
> wrongful act that causes injury; (2) the aider and abettor was aware of his
> role in the overall wrongful activity when he provided the assistance; and (3)
> the aider and abettor knowingly and substantially assisted the primary
> actor's wrongful act.

<u>McMullen</u>, 386 F.3d at 332 (citations omitted). The Court concludes that the only wrongful

act that Ms. Ferrara references is an alleged fraudulent conveyance, which she failed to

establish with competent evidence and which was not a cause of action she was authorized

to bring.  As the First Circuit stated in <u>Morley v. Ontos, Inc. (In re Ontos, Inc.)</u>, 478 F.3d 427

(1st Cir. 2007), *cert. denied,* 552 U.S. 823 (2007):

> The Bankruptcy Code broadly defines the property of the estate to be
> comprised of all "legal or equitable interests of the debtor in property as of
> the commencement of the case." 11 U.S.C. § 541(a)(1). It is well established
> that a claim for fraudulent conveyance is included within this type of
> property. *See* <u>Nat'l Tax Credit Partners v. Havlik</u>, 20 F.3d 705, 708-09 (7th Cir.
> 1994) ("[T]he right to recoup a fraudulent conveyance, which outside of
> bankruptcy may be invoked by a creditor, is the property of the estate that
> only a trustee or debtor in possession may pursue once a bankruptcy is
> under way."); <u>Hatchett v. United States</u>, 330 F.3d 875, 886 (6th Cir. 2003)
> ("[T]he trustee has the exclusive right to bring an action for fraudulent
> conveyance during the pendency of the bankruptcy proceedings. . . .");
> <u>Campana v. Pilavis ( In re Pilavis )</u>, 233 B.R. 1, 3 (Bankr. D. Mass. 1999)
> ("Neither Debtor nor the Trustee disputes the fact that fraudulent
> conveyance action became the property of the estate when Debtor filed for
> relief."). The Appellants are incorrect to assert that they have a cause of
> action for fraudulent conveyance that is separate from the trustee's cause of

action. Indeed, creditors only have standing to pursue such claims during bankruptcy proceedings when a trustee or debtor in possession unjustifiably fails to pursue the claim.  Pilavis, 233 B.R. at 3-4 (citing Glinka v. Abraham and Rose Co., 199 B.R. 484, 493-94 (D. Vt. 1996541(a), 13)).

In re Ontos, Inc., 478 F.3d at 431-32.  As in Ontos, Inc., both the Debtor's fractional interest in Orsara, LLC and any fraudulent transfer claims are property of the Debtor's bankruptcy estate.  See 11 U.S.C. §§ 541(a), 1306.

Although the Debtor had no interest in the actual property of Orsara, LLC, see, e.g., Mass. Gen. Laws ch. 156C, § 38 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property."); In re McCormick, 381 B.R. 594, 599 (Bankr. S.D.N.Y. 2008), the Court is compelled to conclude that the Defendants' actions against the non-debtor parties were, in fact, designed to force payment of the Sanctions Order by the Debtor and thus violated the automatic stay as an act to collect or recover a prepetition claim against the Debtor which is subject to the automatic stay provision set forth at 11 U.S.C. § 362(a)(6).  Ms. Ferrara did not seek relief from the automatic stay to pursue collection of the Sanctions Order under 11 U.S.C. § 362(d) , and the Defendants have not pointed to any applicable exception to the automatic stay under 11 U.S.C. § 362(b).  In sum, the Defendants failed to support the underpinnings of the postpetition complaints in the Probate Court with competent evidence. The Defendants failed to substantiate that the Debtor, Donna or Orsara, LLC engaged in conduct that post-dated the Sanctions Order, failed to establish that Ms. Ferrara  in filing the Verified Complaint was seeking to hold Orsara, LLC or Donna in civil contempt for

24

violation of any type of restraining order or injunction, as opposed to a payment obligation, with respect to the Verified Complaint filed on August 16, 2013, *see* <u>Regal Knitwear Co.</u>, 324 U.S. at 14, and failed to establish standing to assert any fraudulent transfer claims, *see* <u>In re Ontos, Inc.</u>, 478 F.3d at 431-32.  The postpetition Verified Complaint and Amended Verified Complaint can only be considered thinly veiled collection attempts against the Debtor through pressure on his codebtor and spouse, Donna, and his interest in Orsara, LLC.  Accordingly, the Defendants violated the broad shield of the automatic stay, particularly where they had notice of the commencement of the case and the Debtor did not dispute Ms. Ferrara's claim.  *See* 11 U.S.C.§ 362(a)(6).

## VI. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting the Debtor's Motion for Summary Judgment and denying the Defendants' Motion for Summary Judgment.  Because the Court has determined that the Defendants violated the automatic stay under 11 U.S.C. § 362(a), this Court need not determine whether the Defendants violated the codebtor stay under 11 U.S.C. § 1301.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 23, 2014